BUGBEE (BISSELL v.). See Case No. 1,445.

BUJAC v. The MAGOUN. See Case No. 5,-163.

## Case No. 2,116.

BULGIN v. The RAINBOW.

[Bee, 116.][1]

District Court, D. South Carolina. Oct. 3, 1798.

ADMIRALTY—JURISDICTION—MONEY BORROWED TO REPAIR.

If the master borrow money for repairing damages to the vessel done on the high sea, the admiralty has jurisdiction.

[Cited in The Packet, Case No. 10,654; The Gold Hunter, Id. 5,513; The Boston, Id. 1,-669.]

[1] [Reported by Hon. Thomas Bee, District Judge.]

In admiralty.

The libel states that the sloop Rainbow, Sesson, master, took on board, in the port of New York. in June last, certain goods, wares and merchandize consigned to the actor, Mr. Bulgin, in Charleston. That; on her voyage, she was so much damaged in a gale of wind as to be forced into the port of Wilmington, in North Carolina, where it was found that considerable repairs were necessary to enable her to proceed to Charleston. That the master, having neither funds nor credit, disposed of part of the actor's said goods to raise money for payment of these repairs and outfits: and the libel prays that the vessel may be sold to reimburse the same, with damages and costs. Several exhibits are filed with the libel, viz.: 1st. An account, amounting to nine hundred and ninety eight dollars, being the value of the goods sold, with an advance thereon. 2d. A certificate, signed by two merchants here, of the difference between the original invoice, and the goods delivered. 3d. A protest of the master at Wilmington, accompanied with a certificate of two shipmasters and two shipcarpenters of the damage sustained by the vessel, and of the repairs necessary to fit her for sea. 4th. An account-sales of the articles, and also one of the expenditure of the money.

A plea to the jurisdiction of this court has been interposed by William Harding, owner of the sloop, stating that the matters. and things contained in the libel, if they ever took place at all, were transactions on land, of which this court has no cognizance. That they must be referred to a court of common law. That no express hypothecation is produced, and no implied one will subject the vessel to sale. On the part of the libellant it is insisted that hypothecations may be implied as well as expressed. That, for supplies furnished or money advanced, a lien is created, of which this court has jurisdiction. And that the master, having sold goods to raise money for the use of the vessel, must be considered as the agent of Bulgin, to whom the goods belonged; and that an hypothecation must be implied.

This is the first case of the kind that has been brought before me, and I have considered it with attention. The only question now is whether the jurisdiction of the court extends to it. Of all the cases cited not one came up to the point. The cause lately decided by me, of Jones v. The Massachusetts [Case No. 7,480], was very differently circumstanced. That was a suit on a bill of lading of goods at the Havanna, to be delivered in Charleston. They were delivered, but it was alleged that part of them had been damaged in this harbour. As the contract was made on land, and the damage done in port, I dismissed the cause as appertaining to common law jurisdiction exclusively. But here the vessel sustains such damage at sea as forces her into port to refit; to effect which, and enable her again to put to sea, the master raises money by this sale of the actor's goods. The cause then of the transaction arose at sea, and it is agreed that incidental matters follow the original jurisdiction, whatever the nature and complexion of those incidents may be. It is laid down in a treatise de jure maritimo et navali (444): "That if a master take up money to mend or victual his ship, without occasion, he alone shall be liable, though generally the owners shall answer the fact of the master. But if there was cause of mending the ship, though the master spend the money another way, yet the owners and ship become liable to satisfy the creditor." In the same book (450) it is said, that "owners should be cautious whom they appoint to the command of their vessel, since his act subjects them to answer any damage, or other thing he may do in reference to his employment. That, if need be, he may in a strange country borrow money upon some of the tackle, or sell some of the merchandize; the owner of which shall receive the highest price that the remainder of the goods obtain." See 2 Pet. Adm. Append. 67, 79 [A Treatise on the Rights and Duties of Owners, etc., of Ships, Fed. Cas. Append.].

The first section of the Laws of Oleron is quoted in support of this authority, which, I think, is sufficient to sustain the jurisdiction of the court on the present occasion. These laws and others of the same maritime nature must be our guides. I consider the storm at sea as giving rise to this transaction of the master. The vessel could not have left Wilmington without the repairs she got there. and the captain was justifiable under his circumstances in borrowing this money. It was solely for the use of the vessel; and reason, as well. as law, makes her liable. In Vin. Abr. 529, the captain of a vessel pawned his own person for the ransom of his vessel, taken by pirates. They carried him to Sicily, where he borrowed the money, gave bond for it, and redeemed his person. On his return to England, he sued for this money in the admiralty, and recovered it. Prohibition was denied upon application to a court of common law. I am of opinion that the plea to the jurisdiction be dismissed, and that the defendant answer over.[2]

[NOTE. A loan which, by the maritime law, is a privileged debt, gives a lien on the vessel, enforceable in admiralty. Davis v. Child, Case No. 3,628. One who advances money to release a vessel from the custody of a marshal has a lien therefor. The J. R. Hoyle, Id. 7,557. A lien given by a state law for advances made by a master of a vessel navigating the interior wa-

[2] See 2 Pet. Adm. Append. 74, where it is said, that "if a fault of the master respecting the cargo be committed super altum mare, the admiralty shall have jurisdiction." Secus, if on land. The distinction seems strictly applicable here.

ters of a state may be enforced in admiralty. Whitney v. The Mary Gratwick, Id. 17,591. There is no lien for the balance of an account of moneys paid for the use of the owners of a vessel by the agent thereof. Minturn v. Maynard, 17 How. (58 U. S.) 477. One part owner cannot have a lien for moneys advanced to his co-owner. The Larch, Case No. 8,085. One who loans money for the purchase of a vessel, and takes the bill of sale and a power of attorney to sell her, and so reimburse himself, has no lien. The Perseverance, Id. 11,017. Where a stipulation in a hypothecation of a vessel provides that the lender shall not take the risks usual in bottomry, admiralty has no jurisdiction. Maitland v. The Atlantic, Id. 8,980.]